ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| FAREL E. VELÁZQUEZ GÓMEZ Y COMPULSOLUTIONS, LLC.<br><br>Peticionarios<br><br>v.<br><br>INTEGRATED SECURITY SERVICES, INTL. INC.<br><br>Recurrido | TA2026AP00389 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: GB2024CV00786<br><br>Sobre: Cobro de Dinero E Incumplimiento de Contrato |

Panel integrado por su presidenta la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2026.

Este caso se trae como Apelación el pasado 17 de abril de 2026, pues se recurre de un dictamen emitido como Sentencia, pero realmente era una Sentencia Parcial y en el mismo no colocó las denominadas palabras sacramentales, no indicó en ningún sitio que se trataba de una Sentencia Parcial y no escribió en el mismo, que, aunque era parcial, no se debía posponer emitir este dictamen parcial y continuar los procedimientos con el reclamo restante conforme la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap.V.

Perfeccionado el recurso, lo tomamos como *Certiorari*, se mantiene la asignación alfanumérica original al recurso y se expide el Auto y se confirma la determinación emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo, en adelante TPI. El Apelante se denominará Peticionario y la parte

Apelada se les llamará recurrido o ISS. Veamos con más detalle la controversia.

## I.

El 9 de septiembre de 2024, el Peticionario presentó una Demanda sobre Cobro de Dinero e Incumplimiento de Contrato en contra de Integrated Security Services Intl. Inc. (en adelante el "recurrido" o "ISS").[1] En su escrito adujo que trabajó en ISS como Director de Operaciones técnicas del 5 de julio de 2021 al 1 de agosto de 2023.[2] Como parte del acuerdo de empleo se pactó que devengaría un salario de $42,500.00.[3] Además, estaría recibiendo "una comisión por proyecto completado de 3% esta comisión se pagará de acuerdo al método de facturación de la compañía; si se factura como servicio mensual[,] se recibe mensual o si se factura una sola vez se paga al momento de recibir el pago del cliente".[4]

El Peticionario señaló que no ha recibido la comisión correspondiente de ninguno de los proyectos trabajados del 5 de julio de 2021 hasta el 1 de agosto de 2023. Los proyectos trabajados son los siguientes: 1. Municipio de Caguas, 2. Bella Group, 3. Hotel Nickelodeon, 4. El Municipio de Juncos y 5. La Cooperativa Sagrada Familia en el Municipio de Naranjito.[5] Por último, expuso que se le pague la cantidad de $234,385.00 por concepto de las Comisiones y por sus funciones realizadas que no formaron parte de sus labores como director.[6]

El 14 de noviembre de 2024, se diligenció el emplazamiento correspondiente a ISS.[7]

---

[1] Véase Ent. Sum. TPI. Núm. 1.
[2] *Íd.*
[3] *Íd.,* exhibit 1.
[4] *Íd.,* exhibit 1.
[5] *Íd*.
[6] *Íd*.
[7] Véase Ent. Sum. TPI. Núm. 7.

El 8 de enero de 2025, el Recurrido presentó su Contestación a Demanda. [8] En su escrito esbozó que todo proyecto generado por el Peticionario se le pagó.[9] Además, expuso que los entes enumerados en el párrafo número ocho (8) eran proyectos que habían comenzados antes del Peticionario laborar en ISS, por lo que no le correspondían comisión alguna.[10] Dentro de las defensas afirmativas presentadas ISS presentó que la causa de acción estaba prescrita a base de la Ley Núm. 180 – 1988.[11] El cual establece un término prescriptivo de un (1) año para poder reclamar salarios según lo definido en el estatuto.[12]

Después de varias instancias procesales, el 23 de febrero de 2026, el Recurrido presentó una Moción de Sentencia Sumaria Parcial en cuanto a la acción salarial del Sr. Farel Velázquez Gómez.[13] En su escrito reiteró que:

> El Sr. Velazquez renunció a su empleo en ISS el 1 de agosto de 2023, y presentó su demanda, reclamando el pago de comisiones, cuya naturaleza es salarial, el 9 de septiembre de 2024, por lo que su causa de acción esta prescrita según dispone el Artículo 2.18 de la Ley 4-2017, el cual establece que "[l]as reclamaciones relacionadas al cobro de salarios o comisiones prescriben al año.[14]

Por otro lado, el 16 de marzo de 2026, el Peticionario formuló su Oposición a Moción de Sentencia Sumaria.[15] En su escrito adujo que su reclamación no es una de carácter salarial, sino que es una de incumplimiento contractual por las comisiones pactadas por las partes. Además, señaló que existe controversias en torno a la naturaleza contractual de las comisiones, los

---

[8] Véase Ent. Sum. TPI. Núm. 10.
[9] *Íd.*
[10] *Íd.*
[11] *Íd.*
[12] *Íd.*
[13] Véase Ent. Sum. TPI. Núm. 50.
[14] *Íd.*, pág. 2.
[15] Véase Ent. Sum. TPI. Núm. 55.

proyectos completados por el Peticionario y los trabajos realizados fuera de las funciones ordinarias. [16]

El 20 de marzo de 2026, el foro primario emitió documento denominado Sentencia y realizó las siguientes determinaciones de hechos:

1. Farel E. Velázquez Gómez (Velázquez Gómez) fue empleado de Integrated Security Services Intl. Inc. (ISS) desde el 5 de julio de 2021 hasta el 1 de agosto de 2023.
2. El pleito de epígrafe se presentó el 9 de septiembre de 2024.
3. La demanda incluye una reclamación de comisiones generadas durante la relación de empleo había entre ISS y Velázquez Gómez.
4. Las comisiones reclamadas por Velázquez Gómez surgen del contrato de empleo. Incluso, en la carta fechada 28 de junio de 2021 ISS le indica a la parte demandante lo siguiente:

   > Es con gran entusiasmo que me complace ofrecerle la posición de Operaciones Técnicas de Integrated Security Services Intl. Inc. Esta posición es de carácter regular y usted devengaran un salario de $42,500.00 al año. En adición [sic.] [,] usted recibirá una comisión por proyecto completado de 3%, esta comisión de [sic] pagará de acuerdo al método de facturación de la compañía; si se facturara como servicio mensual se recibe mensual o si se factura una sola vez se paga al momento de recibir el pago del cliente.
   > Como posición regular tiene derecho a los beneficios de vacaciones y enfermedad según la política de la compañía.
   > Su primer día de trabajo será el lunes [,] 5 de julio del [sic] 2021.
   > …

5. El 1 de agosto de 2023, ISS suscribió un contrato de servicios profesionales con Compusolutions, LLC, el cual estuvo representado por Velazquez Gómez en calidad de Presidente.
6. Compusolutions LLC., es una compañía de responsabilidad limitada debidamente autorizada a realizar negocios, con personalidad jurídica propia.
7. No existe alegación en la demanda de levantamiento del velo corporativo.

Asimismo, el foro primario declaró "Ha Lugar" la Moción de Sentencia Sumaria y desestimó con perjuicio la reclamación

---

[16] *Íd.*

salarial incoada por el Peticionario. En su documento titulado Sentencia, el TPI, no indicó en ningún sitio que se trataba de una Sentencia Parcial y no escribió en el mismo, que, aunque era parcial, no se debía posponer emitir este dictamen parcial y continuar los procedimientos con el reclamo restante.

Inconforme con esa determinación, el 17 de abril de 2026, el Peticionario presentó un Recurso Apelativo ante este foro en el cual realizo los siguientes señalamientos de errores:

A. ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA PARCIAL Y DESESTIMAR, CON PERJUICIO, LA RECLAMACIÓN DEL SR. VELAZQUEZ, AL CONCLUIR QUE LAS COMISIONES RECLAMADAS SURGEN EXCLUSIVAMENTE DEL CONTRATO DE EMPLEO.

B. ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA PARCIAL Y DESESTIMAR, CON PERJUICIO, LA RECLAMACIÓN DEL SR. VELÁZQUEZ, SIN DETERMINAR PREVIAMENTE CUANDO SURGÍA SU DERECHO A COBRAR LAS COMISIONES Y, POR CONSIGUIENTE, SIN ESTABLECER EL PUNTO DE PARTIDA DEL TÉRMINO PRESCRIPTIVO.

C. ERRÓ EL TPI AL FRAGMENTAR INDEBIDAMENTE LA CAUSA DE ACCIÓN Y DESESTIMARLA PARCIALMENTE COMO RECLAMACIÓN SALARIAL, SIN DISTINGUIR NI ADJUDICAR LA EXISTENCIA DE OBLIGACIONES CONTRACTUALES INDEPENDIENTES Y SERVICIOS PRESTADOS FUERA DEL CURSO ORDINARIO DEL EMPLEO, LO QUE RESULTO EN UNA APLICACIÓN PREMATURA E INCORRECTA DEL TÉRMINO PRESCRIPTIVO DE LA LEY NÚM. 4 – 2017.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, 32 LPRA sec. 3491, hoy conocido como Ley de Recursos Extraordinarios. Véase también 800 Ponce de *León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare*, LLC, 194 DPR 723, 728 (2016). Aunque el

*certiorari* se reconoce como un recurso discrecional la sensatez del juzgador se guía por unos límites. Es decir, la discreción judicial no es irrestricta y ha sido definida en nuestro ordenamiento jurídico como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

El primero de estos límites es la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Esta dispone en lo pertinente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superados los criterios de la Regla 52.1 de Procedimiento Civil, venimos llamados a ejercer nuestro criterio sujeto a lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el tribunal tomará en consideración los siguientes criterios al determinar la

expedición de un auto de *certiorari* o de una orden de mostrar causa:

> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

## B. Moción de Sentencia Sumaria

Según el tratadista Hernández Colon una moción de sentencia sumaria "es aquella que solicita que se dicte sentencia a favor del promovente a base de prueba que a la moción se acompaña sin necesidad de que se celebre vista en su fondo porque en realidad no existe controversia real sobre ningún hecho material en el caso". R. Hernández Colon, Práctica Jurídica de Puerto Rico: Derecho Procesal Civil, 6.a ed. rev. San Juan, Ed. Lexis Nexis, 2017, pág. 313. La moción de sentencia sumaria solo va a proceder en aquellos casos en los cuales no existan controversias reales y sustanciales en cuanto a los hechos materiales, por lo que al juez solo le restara aplicar el derecho. *Meléndez González et al v. M. Cuebas*, 193 DPR 100, 109 (2015). El Tribunal Supremo de Puerto Rico ha establecido que "un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Íd*., pág. 110.

La Regla 36 de Procedimiento Civil regula el mecanismo procesal de la moción de sentencia sumaria. La Regla 36.3 inciso (e) de dicha regla dispone que para emitir una determinación de forma sumaria será necesario que las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real y sustancial en cuanto a algún hecho esencial y como cuestión de derecho se dictara una sentencia favorable de la parte peticionaria. 32 LPRA Ap. V.

Por otro lado, la Regla 36.3 (b)(2) establece que la parte que conteste la moción de sentencia sumaria debe hacer referencia a los párrafos de los hechos esenciales y pertinentes que estén en controversia. 32 LPRA Ap. V.  Asimismo, debe indicar las páginas de las declaraciones juradas u otra prueba en donde se establezcan los hechos que los respaldan. Íd.   La controversia en cuanto a los hechos esenciales debe ser una real, por lo tanto, cualquier duda que surja no es suficiente para vencer la moción de sentencia sumaria. *Oriental Bank v. Perapi*, 192 DPR 7, 26 (2014).

Cuando se presente una moción de sentencia sumaria la parte promovida no puede descansar solamente en las declaraciones o negaciones de su alegación, si no que tiene el deber de contestar especifica y detalladamente como el promovente. De no actuar así, el tribunal dictara sentencia sumaria en su contra si procede. 32 LPRA Ap. V., R. 36.3 (c).  SLG *Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 433 (2013). Por lo tanto, la parte que se opone a la moción de sentencia sumaria no puede cruzarse de brazos y descansar en sus planteamientos. Oriental Bank v. Perapi, supra., pág. 27.   Si no que una vez se presente una controversia real y sustancial y este se oponga a la

moción de sentencia sumaria tiene que presentar prueba al juez que lo convenza de resolver a su favor. Íd.

El Tribunal de Apelaciones se encuentra en la misma posición que el foro primario a la hora de revistar una solicitud de sentencia sumaria. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El Tribunal Supremo en el caso normativo de *Meléndez González et al v. M Cuebas*, supra, pág., 119 estableció cual es el estándar que utilizara el Tribunal de Apelaciones si concede o niega una moción de sentencia sumaria. El estándar es el siguiente:

> Primero: (. . .) [E]l foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es de novo y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de sentencia Sumaria al foro primario, llevando a cabo todas las inferencias permisibles a su favor.

> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumpla con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.

> Tercero, en el caso de revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con las exigencias de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuales hechos materiales encontró que están en controversia y cuales están incontrovertidos. Esta determinación se puede hacer en la sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> Cuarto, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de novo si el Tribunal de Primera Instancia aplico correctamente el Derecho a la controversia. Íd

### C. Contrato de Empleo y Prescripción

La Núm. 4 – 2017 también conocida como la Ley de Transformación y Flexibilidad Laboral establece cuales son las normas aplicables al contrato de empleo. Este estatuto en su Art. 2.1 establece que contrato de empleo es:

> Un contrato mediante el cual una persona jurídica o natural, llamado "patrono," contrata a una persona natural, llamado "empleado" para que este preste servicios de naturaleza voluntaria para el beneficio del patrono o una tercera persona, *a cambio de recibir compensación por los servicios prestados*, cuando los servicios son prestados por cuenta ajena y dentro del ámbito de la organización y bajo la dirección directa del patrono. El término "patrono," cuando se utiliza en un contrato o en una ley, incluye a toda persona que represente al patrono o ejerza autoridad a nombre de éste, pero a los únicos fines de identificar la persona cuya decisión, acto u omisión se considerara atribuible al patrono, a menos que se disponga expresamente lo contrario. 29 LPRA sec. 122a. (Énfasis suplido).

El art. 2. 4 del antes mencionado estatuto no impone un requisito de forma para pactar la voluntad de las partes, por lo cual se puede establecer mediante un acuerdo verbal o escrito a menos que una ley especial lo prohíba. 29 LPRA sec. 122c.

El Art. 1189 del Código Civil de 2020, 31 LPRA sec. 9841 define la prescripción como "una defensa que se opone a quien no ejercita un derecho de acción dentro del plazo de tiempo que la ley fija para invocarlo. Las acciones prescriben por el mero lapso del tiempo fijado por la ley". La prescripción es una institución de derecho civil sustantivo y no procesal, que obedece a una finalidad publica de darle seguridad a las relaciones jurídicas. Maldonado Rivera v. Suarez, 195 DPR 182, 193 (2016).

La prescripción es una defensa afirmativa que es oponible a quien no ejercita su causa de acción dentro del plazo establecido por la ley. 31 LPRA sec. 9481. El Art. 2.18 de la Ley de Transformación y Flexibilidad Laboral establece un plazo de prescripción de un (1) año para reclamar acciones derivadas de

un contrato de empleo o los beneficios que surjan del mismo. La fecha en que comenzara a transcurrir el plazo de prescripción es cuando se pueda ejercer la acción. 29 LPRA sec. 122q. Una vez el plazo establecido por ley vence, la prescripción surtirá efectos si es invocada por quien puede beneficiarse de esta defensa. 31 LPRA sec. 9484.

La prescripción tiene como fin castigar la inactividad de ejercer las causas de acción e impedir litigios que sean arduos de adjudicar debido a la antigüedad de la reclamación. SLG García - Villega v. ELA et al, 190 DPR 799, 813 (2014). De esta manera, "se evitan las consecuencias que genera la resucitación de reclamaciones viejas, como la perdida de evidencia, la perdida de testigos o la dificultad para contactarlos y la memoria imprecisa". *Íd*.

### D. Sentencias relativas a reclamaciones o partes múltiples.

La Regla 42.1 de las de Procedimiento Civil, ante, define los que es una sentencia y una resolución. En cuanto a la sentencia, la referida Regla establece que ese término "incluye cualquier determinación del Tribunal de Primera Instancia que **resuelva finalmente** la cuestión litigiosa y de la cual pueda apelarse". (Énfasis nuestro). Distinto a ello, una resolución "incluye cualquier dictamen que pone fin *a un incidente* dentro del proceso judicial". (Itálicas nuestras). Véase, además, *Cortés Pagán v. González Colón*, 184 DPR 807, 812-813 (2012). Independientemente del título que haya utilizado el tribunal para identificar su dictamen, "como el nombre no hace la cosa", hay que distinguir si se trata de una resolución o de una sentencia. *Íd*., página 813. Así pues, "[…] cuando el tribunal emite una resolución que tiene el efecto de poner fin a una reclamación entre las partes no nos

encontramos ante una verdadera resolución, sino ante una sentencia de la cual se puede interponer un recurso de apelación". *Íd*.

Por otra parte, el tribunal puede dictar una sentencia parcial final cuando no exista razón para continuar el litigio contra alguna de las partes o reclamaciones. *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 906 (2012); *U.S. Fire Ins. v. A.E.E.*, 151 DPR 962, 967-968 (2000). En lo pertinente, la Regla 42.3 de las de Procedimiento Civil, *supra*, dispone lo siguiente:

> Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero, o *figuren en él partes múltiples*, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, **siempre que concluya expresamente** que no existe razón para posponer que se dicte sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia.

> Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a las reclamaciones o los derechos y las obligaciones en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, comenzarán a transcurrir en lo que a ella respecta los términos dispuestos en las Reglas 43.1, 47, 48 y 52.2. (Itálicas y énfasis nuestro).

El propósito de esta regla es "[…] evitar la posible injusticia que causa una dilación en emitir la sentencia sobre una reclamación distintamente diferenciada de las otras o en [cuanto] a menos partes del total de litigantes prolonga[n]do la adjudicación hasta la adjudicación total respe[c]to a todas las reclamaciones o todas las partes". R. Hernández Colón, *Práctica jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2017, sec. 4107, pág. 424. Véase, además, 10 Wright-Miller-Kane, *Federal Practice and Procedure*, Sec. 2645 (1998). Es menester señalar que el tribunal no podrá utilizar este mecanismo cuando vaya a adjudicar una

controversia en un caso en el que se plantean dos o más controversias pero que contiene una sola reclamación. R. Hernández Colón, *op cit.*, sec. 4107, pág. 424, n. 20. Véase, además, *García Morales v. Padró Hernández,* 165 DPR 324 (2005).

Al dictar una sentencia parcial, el tribunal tiene que incluir expresamente que *no existe razón para posponer dictar sentencia sobre esa reclamación hasta la resolución total del caso* y, a su vez, ordenar que ésta sea registrada. Regla 42.3 de las de Procedimiento Civil, *supra*; R. Hernández Colón, *op cit.*, sec. 4107, pág. 424. De ese modo, "le imparte carácter de finalidad a la sentencia parcial". *Íd*. Así dictada, las partes podrán presentar cualesquiera de las mociones posteriores a la sentencia para modificarla, reconsiderarla o apelarla. *Íd*.

### III.

Previo a entrar en el caso que tenemos ante nuestra consideración, reiteramos que le correspondía al foro primario emitir una Sentencia Parcial y no una Sentencia. El escrito que presentó el recurrido el 23 de febrero de 2026 era una Moción de Sentencia Sumaria Parcial. La Sentencia emitida por el foro primario adolecía de las palabras sacramentales según lo establecido en la Regla 42.3 de Procedimiento Civil, supra. Por lo tanto, el foro primario tenia que plasmar en su Sentencia Parcial que *no existe razón para posponer dictar sentencia sobre esa reclamación hasta la resolución total del caso* y, a su vez, ordenar que ésta sea registrada. Esto con el propósito de que le pudiera poner finalidad a la controversia adjudicada.

Por estar estrechamente relacionados los señalamientos de errores se estarán analizando en conjunto. En resumidas cuentas, el Peticionario expone que erró el foro primario en desestimar la

demanda con perjuicio al aplicar el término prescriptivo de la Ley Núm. 4 – 2017. No le asiste la razón.

El 9 de septiembre de 2024, el Peticionario presentó una Demanda sobre Cobro de Dinero e Incumplimiento de Contrato en contra del recurrido. Una de sus reclamaciones giraba en torno a que alegadamente no se le habían pagado unas comisiones de tres (3) porciento sobre varios proyectos en los que él había trabajado. La fecha de culminación del Peticionario en la compañía ISS fue el 1 de agosto de 2023.

Según el Art. 2.1 de la Ley Núm. 4 – 2017 el contrato de empleo aplica cuando una persona jurídica llamada patrono contrata a una persona natural, en nuestro caso ISS y el Peticionario, respectivamente con el propósito de que preste una serie de servicios, en nuestro caso en el mundo de las tecnologías e información a cambio de recibir una compensación por sus servicios prestados. A nuestro entender bajo la palabra compensación que incluye el estatuto se tiene que considerar los salarios y las comisiones.[17]

Si muy bien, en el Contrato que forma parte del expediente apelativo no surge una cláusula contractual plasmada en torno a las comisiones. El documento que crea la obligación debe interpretarse como parte del Contrato de Empleo. Debido a que, las características del documento y actores obrero-patronales se acercan más a un contrato de empleo que a una obligación aislada que forme parte de la teoría general o especial de los contratos y le aplique el término prescriptivo de las acciones personales en torno a los cuatro años según establecido en el Art. 1203 del Código Civil de 2020. 31 LPRA sec. 9495. Es un principio cardinal

---

[17] Según la Real Academia Española las comisiones son un "[p]orcentaje que percibe un agente sobre el producto de una venta o negocio".

de nuestro ordenamiento jurídico que la ley especial va por encima que la ley general.

El Art. 2.18, 29 LPRA sec. 122q establece un plazo de prescripción de un año para reclamar las acciones derivadas de un contrato de empleo o los beneficios que surjan del mismo. Habiendo el Peticionario cesado sus funciones el 1 de agosto de 2023 el plazo para incoar la Demanda tenía que surgir antes del 1 de agosto de 2024. No obstante, surge del expediente que esta fue presentada el 9 de septiembre de 2024. Por lo tanto, estaba fuera del término establecido por ley y por consiguiente prescrita su reclamación en torno al cobro de las comisiones. Ahora bien, le corresponde al foro primario dilucidar el resto de las causas de acciones según surge de la Demanda.

## IV.

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *certiorari* y confirmamos la llamada Sentencia que es en realidad una resolución y el Tribunal debe continuar los procedimientos según explicado.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones